UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LISA PACK, | CASE NO. 1:10CV2800 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| v. | Magistrate Judge George J. Limbert |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

Lisa Pack ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court reverse the Commissioner's decision and remand this case to the Administrative Law Judge ("ALJ"):

I.  **PROCEDURAL AND FACTUAL HISTORY**

On July 14, 2008, Plaintiff filed an applications for DIB, alleging disability beginning on June 1, 2008 due to multiple sclerosis ("MS"), chronic back pain, low blood pressure, low blood sugar, and vision problems. ECF Dkt. #14-5 at 12; ECF Dkt. #14-6 at 21. The SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt. #14-4 at 2-4, 8-9. Plaintiff filed a request for an administrative hearing and on December 3, 2009, an ALJ conducted an administrative hearing. ECF Dkt. #14-4 at 15-17; ECF Dkt. #14-2 at 21. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Gene Burkhammer, a vocational expert ("VE"). *Id.*

On April 6, 2010, the ALJ issued a decision denying benefits. ECF Dkt. #14-2 at 10-17. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. ECF Dkt. #14-2 at 2-6; ECF Dkt. #14-4 at 20-21.

On December 10, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On May 13, 2011, Plaintiff filed a brief on the merits.  ECF Dkt. #15.  On July 27, 2011, Defendant filed a brief on the merits.  ECF Dkt. #19.  No reply brief was filed.

**II.  SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In her decision, the ALJ determined that Plaintiff suffered from MS and orthostatic hypotension, which qualified as severe impairments under 20 C.F.R. §404.1521 *et seq.* and 20 C.F.R. § 416.921 *et seq.*  ECF Dkt. #14-2 at 11.  The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id.*  She discounted Plaintiff's allegations of pain and concluded that Plaintiff had the residual functional capacity ("RFC") to perform the following limited range of light work: lifting, carrying, pushing or pulling up to ten pounds frequently and up to twenty pounds occasionally; sitting up to six hours of an eight-hour workday; standing and/or walking two hours of an eight-hour workday; a sit-stand option every hour to allow Plaintiff to alternate between sitting and being on her feet; occasional climbing of stairs and ramps, occasional bending, balancing, stooping, kneeling, crouching, and crawling; and no working around hazards.  *Id.* at 13.

Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could not return to her past relevant work as a registered nurse, but could perform jobs existing in significant numbers in the national economy, including that of a food and beverage order clerk, information clerk, and surveillance system monitor.  ECF Dkt. #14-2 at 16-17.

**III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment

>   which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported

an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

**V.     ANALYSIS**

Plaintiff's sole assertion of error is that the ALJ failed to properly apply the treating physician rule to the opinions of her treating neurologist, Dr. Craciun. ECF Dkt. #15 at 7. The undersigned recommends that the Court find merit to Plaintiff's assertion.

In giving "little weight" to the September 2, 2009 opinion of Dr. Craciun, the ALJ stated that his opinion was conclusory and "not supported by the evidence as a whole including the evidence already cited to in this decision including the opinions of the reviewing state agency physicians." ECF Dkt. #14-2 at 15-16. The ALJ also footnoted that the question of whether a claimant is disabled is ultimately the decision of the ALJ and not a treating physician. *Id.* at 16, fn. 23. That is the extent of the ALJ's discussion of Dr. Craciun's treatment notes and opinions.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. §416.927(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to

-4-

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004), quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why she rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544.

Dr. Craciun is Plaintiff's treating neurologist. The record shows that Dr. Craciun began seeing Plaintiff on February 12, 2008 upon referral for Plaintiff's focal neurologic problems. ECF Dkt. #14-12 at 17. Plaintiff complained that she lost vision in her left eye and had increasing numbness on the left side of her face with flashing light sensation in the left eye. *Id.* Dr. Craciun observed that Plaintiff had a normal gait, but upon turning and changing direction, she had minor difficulty in ambulation in tandem gait. *Id.* at 18. Plaintiff also had decreased pinprick sensation in left forehead and midportion of the left face, a trace of spasticity in the left lower extremity. *Id.* Dr. Craciun ordered a brain MRI and blood work. *Id.* at 18-26.

The February 14, 2008 MRI showed non-specific T-2 prolongated foci and periventricular white matter and additional areas in the corpus callosum and within precentral gyrus. ECF Dkt. #14-12 at 25. The doctor's impression was that given Plaintiff's symptoms, the foci could be early presentation of MS. *Id.*

On April 23, 2008, Plaintiff returned to Dr. Craciun for follow-up. ECF Dkt. #14-12 at 14. Dr. Craciun reported that Plaintiff "continues to be fatigued. She is experiencing overwhelming periods of fatigue at one time or another interfering significantly with her endurance and ability to perform different tasks." *Id.* Plaintiff also complained of "significant pain" involving her lower

-5-

extremities. *Id*. at 14-15. Upon examination, Dr. Craciun reported normal findings. He recommended a spinal tap in order to rule out a demyelinating disease such as MS. *Id*. at 15.

Plaintiff returned to Dr. Craciun one month later, on May 21 2008, and he diagnosed Plaintiff with a mild form of relapsing, remitting MS in light of her reported symptoms, the white matter on the brain MRI, the abnormal spinal fluid, and the abnormal visual evoked responses. ECF Dkt. #14-12 at 11-12. Dr. Craciun's physical examination revealed that Plaintiff had a narrow gait. *Id*. at 12. He discussed therapeutic modalities with Plaintiff and informed her of the "character and natural history of" MS. *Id*. at 12. He discussed medications and other treatments for MS and the pros and cons of each. *Id*. He also informed Plaintiff that should she experience a relapse, IV steroids were available for her. *Id*.

On July 30, 2008, Plaintiff treated with Dr. Craciun and declined using disease-modifying drugs at that time. ECF Dkt. #14-12 at 8. Dr. Craciun noted that he expressed no objections to her decision and presented Plaintiff again with the pros and cons of treatment. *Id*. Dr. Craciun noted: "She is tired. She is certainly at times experiencing numbness and tingling sensation. Fatigue remains a major element, and I discussed unfavorable role of heat exposure with respect to the demyelinating disease." *Id*. Dr. Craciun again stressed to Plaintiff that she could use IV steroids if she experienced a relapse. *Id*.

On April 2, 2009, Plaintiff returned to Dr. Craciun after using the IV steroids one time since her last visit. ECF Dkt. #14-12 at 5-6. Dr. Craciun indicated that Plaintiff had been stable, but recently had overwhelming stress as her father had died. *Id.* at 6. Plaintiff reported that she had been feeling uncomfortable and was experiencing right-sided numbness. *Id.*

On September 2, 2009, Plaintiff returned to Dr. Craciun. ECF Dkt. #14-12 at 2. Plaintiff had undergone two IV steroid rounds since her last visit and she reported periods of exacerbation and weakness in her legs and difficulty ambulating. *Id.* Dr. Craciun again noted that fatigue was a major concern, as Plaintiff reported that she could function only for two or three hours in the morning and after that she was tired and at the end of the day she was totally unable to function. *Id*. Dr. Craciun noted: "She is exhausted and needs prolonged periods of rest. We discussed the implication, the fact that 80% of people who have multiple sclerosis have such fatigue." *Id*. He also

-6-

noted that Plaintiff was under psychological stress as a close family member had died and she was caring for her child who has attention deficit hyperactivity disorder. *Id.* at 2-3. Clinical examination revealed mild known spasticity bilaterally in more of the lower extremities than the upper extremities. *Id.* at 3. He also noted that a sensory examination showed a pinprick level at T2-T3. *Id.* He diagnosed Plaintiff with MS, relapsing-remitting type, orthostatic hypotension, and severe chronic fatigue secondary to the MS. *Id*. Dr. Craciun noted that he wanted Plaintiff to undergo another brain MRI, but she declined due to financial strain. *Id.* He continued her Valium prescription and prescribed Ritalin to help with the fatigue. *Id*. He noted that "I think at this point, based on her complaints and diagnoses, clearly that she is unable to perform a full-time job and unable to sustain the stressful situation dictated by any job." ECF Dkt. #14-12 at 3.

The Sixth Circuit Court of Appeals "has long recognized that MS is a progressive disease for which there is no cure and which is subject to periods of remission and exacerbation." *Wilcox v. Sullivan*, 917 F.2d 272, 278 (6th Cir.1990); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir.1981). However, MS is not per se disabling under the social security regulations. *See Jones v. Secretary of Health and Human Services,* No. 93-1958, 1994 WL 468033, at * 3 (6th Cir.1994) (collecting cases). Fatigue is a symptom of MS and should be addressed by the ALJ. *Bryant v. Astrue*, No. 09-CV-10318, 2010 WL 681285, at *9 (E.D. Mich., Feb. 23, 2010), citing *Fisher v. Barnhart*, 393 F.Supp.2d 343, 346-47 (E.D.Pa.2005) (focusing on the "singular nature of the disease in terms of cyclical impairment," in addressing "standard M.S. related symptoms of fatiguability (excessive) and heat intolerance"); *Claussen v. Chater*, 950 F.Supp. 1287, 1297 (D.N.J.1996) (Claimant's assertion of debilitating fatigue appeared to be reasonably supported by the medical evidence where multiple sclerosis is a "disease characterized by fatigue" under the Administration's guidelines.); and *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir.1981) ("In conditions which are episodic in character, such as multiple sclerosis or myasthenia gravis, consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals.").

The undersigned recommends that the Court find that the ALJ in this case failed to comply with the treating physician rule. The ALJ failed to show that she considered the relevant regulations and law in considering Dr. Craciun's opinions beyond his September 2, 2009 statement of disability.

In fact, the ALJ failed to address any other part of Dr. Craciun's September 2, 2009 note or his other treatment notes in her decision. Moreover, she failed to sufficiently articulate her reasons for attributing less than controlling weight to Dr. Craciun's opinions. She did not explain why or if Dr. Craciun's opinion was well-supported by acceptable medical techniques and instead proceeded to determine whether his opinion was inconsistent with the other evidence in the record. She failed to show that she reviewed and considered the factors, including the length of the treatment relationship between Plaintiff and Dr. Craciun, the nature and extent of their relationship, the supportability of his opinion, and Dr. Craciun's specialization as a neurologist, in deciding to give his opinion less than controlling weight. *See Wilson*, 378 F.3d at 544. She also failed to explain why Dr. Craciun's opinion, even if not given controlling weight, was not entitled to great deference. Even if the treating physician's opinion is not given controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Rogers*, 486 F.3d at 242. The ALJ also failed to address the critical symptom of severe fatigue that Plaintiff consistently complained of and that Dr. Craciun consistently documented and found supported by Plaintiff's MS diagnosis.

Moreover, even the evidence that the ALJ relied upon in determining Plaintiff's RFC fails to provide sufficient support for her decision to attribute only little weight to Dr. Craciun's opinions. The ALJ states in her RFC and credibility evaluation that Plaintiff's medical records "do not show ongoing, significant pathology over any continuous 12-month period since June 1, 2008." ECF Dkt. #14-2 at 14. However, Plaintiff was diagnosed with MS by a neurologist after an abnormal brain MRI, an abnormal spinal tap and a Visual Evoked Potential Study. ECF Dkt. #14-12 at 11-12. Moreover, the ALJ found that no evidence existed of ongoing and significant sensory, reflex or motor loss in Plaintiff's upper or lower extremities during any continuous 12-month period since June 1, 2008, and she found no documented evidence of muscle wasting/atrophy in Plaintiff's upper or lower extremities. However, as explained above, MS is a disease of remittance and exacerbation. *Wilcox v. Sullivan*, 917 F.2d 272, 278 (6th Cir.1990); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir.1981). Moreover, Plaintiff has reported such exacerbations and extremity weaknesses to Dr. Craciun, although most of Dr. Craciun's clinical examinations have revealed only minor

abnormalities when he examined her, except for findings of a narrowing gait, mild spasticity and decreased pinprick sensations. ECF Dkt. #14-12 at 2-3, 14-15, 18-26. The ALJ also noted that Plaintiff had not been hospitalized for her MS. ECF Dkt. #14-2 at 15. However, the ALJ fails to address the fact that Plaintiff has had to undergo IV steroid therapy on a few occasions and has been prescribed Ritalin to help with her fatigue. ECF Dkt. #14-12 at 2-3. The ALJ also concludes that Plaintiff is able to engage in a fairly wide range of activities and cites to Plaintiff's hearing testimony and her reports on her agency forms. ECF Dkt. #14-2 at 15. However, these reported activities are minimal and include making simple meals, caring for her personal hygiene, driving when her vision is not impaired, grocery shopping and handling money. ECF Dkt. #14-7 at 5-7. Moreover, the ALJ notes that Plaintiff works two days per month, although this did not amount to substantial gainful activity. ECF Dkt. #14-2 at 15. However, Plaintiff testified that recently she has not been able to even work two days per month because of MS exacerbations. ECF Dkt. #14-2 at 45. She also explained that when she feels that she can work, she does nothing for three days prior to her workday to rest before working a full day and then she stays in bed the entire next day after working. *Id.* Finally, the Court should find that the ALJ erred in relying upon the agency reviewing physicians' opinions to attribute less than controlling weight to Dr. Craciun's opinion, to the extent that this was her main or only reason for doing so. *See Hensley v. Astrue*, 573 F.3d 263, 267 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion.").

In *Wilson*, the Sixth Circuit held that the good reasons requirement of the treating physician rule is an important procedural safeguard for claimants. However, the *Wilson* Court left open the possibility that a de minimis violation of the good reasons requirement may constitute harmless error, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." 378 F.3d at 547. The *Wilson* Court noted that harmless error may also be found if "the Commissioner has met the goal of § 1527(d)(2)– the provision of the procedural safeguard of reasons— even though she has not complied with the terms of the regulation." *Id.* In this case, the undersigned recommends that the Court find that Dr. Craciun's opinion is not so

-9-

patently deficient that it could not be credited.  The undersigned further recommends that the Court find that the goal behind the treating physician rule has not been met even though the ALJ failed to comply with the regulation.

## VI.	CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court reverse the ALJ's decision and remand the instant case to the ALJ for further proceedings consistent with this Report and Recommendation.

DATE: February 6, 2012	 */s/George J. Limbert*
	GEORGE J. LIMBERT
	UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).